1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE CROSS, | Case No.: 15CV2506-MMA (DHB) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE;** |
| v. | |
| HFLP - DOLPHIN BEACH, LLC, | [Doc. No. 40] |
| Defendant. | **DENYING DEFENDANT'S MOTION FOR SANCTIONS; AND** |
| | [Doc. No. 44] |
| | **DENYING PLAINTIFF'S MOTION FOR SANCTIONS** |
| | [Doc. No. 47] |

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant HFLP - Dolphin Beach, LLC moves to dismiss Plaintiff Diane Cross's Third Amended Complaint ("TAC"), which alleges claims for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12101 *et seq*., the Fair Housing Act and the Fair Housing Amendments Act (collectively, the "FHA"), 42 U.S.C. §§ 3600 *et seq*., and California's Unruh Civil Rights Act, California Civil Code § 51 *et seq*. *See* Doc. No. 40. Defendant also moves to strike or dismiss Plaintiff's state law claims. *See* Doc. No. 40. Each party also moves for sanctions under Federal Rule of Civil Procedure 11. *See* Doc.

Nos. 44, 47.  The Court found these matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss and to strike, Doc. No. 40, **DENIES** Defendant's motion for sanctions, Doc. No. 44, and **DENIES** Plaintiff's motion for sanctions, Doc. No. 47.

### PROCEDURAL HISTORY

On October 9, 2015, Plaintiff commenced this action in the Superior Court for the State of California, County of San Diego, case number 37-2015-00034063-CU-CR-CTL, against Defendant.  On November 5, 2015, Defendant removed the case to this Court. On November 20, 2015, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging the Court lacked subject matter jurisdiction over the action.  Doc. No. 2.  However, Plaintiff subsequently filed the First Amended Complaint ("FAC"),[1] which superseded the original complaint, and rendered moot Defendant's motion to dismiss the original Complaint.  *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  The FAC included claims for violations of the ADA, the FHA, and California's Unruh Civil Rights Act.

Defendant then filed a motion to dismiss the FAC, which the Court granted.  *See* Doc. No. 13.  The Court dismissed Plaintiff's ADA claims without prejudice pursuant to Rule 12(b)(1) on the grounds that Plaintiff had not sufficiently alleged standing. Specifically, the Court found Plaintiff failed to sufficiently allege a "real and immediate threat of repeated injury," as required in ADA cases where injunctive relief is the only remedy available to private plaintiffs.  *See* Doc. No. 13; *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011).  Additionally, the Court dismissed without prejudice Plaintiff's FHA claims pursuant to Federal Rule of Civil Procedure 8, concluding that Plaintiff's allegations did not provide Defendant with adequate notice of

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ."  Plaintiff filed her amended pleading within 21 days of service of Defendant's motion to dismiss.

her claims or their grounds.  The Court declined to address Plaintiff's claims arising under California law at that stage.  The Court allowed Plaintiff to amend claims dismissed without prejudice.

Subsequently, Plaintiff filed a Second Amended Complaint ("SAC"), and Defendant moved to dismiss the SAC.  Before the Parties completed briefing on Defendant's motion to dismiss, Plaintiff filed a motion for leave to file a Third Amended Complaint ("TAC").  The Court granted Plaintiff's motion, and denied Defendant's motion to dismiss as moot.  *See* Doc. No. 38.  Plaintiff filed the TAC, and Defendant now moves to dismiss Plaintiff's federal claims pursuant to Rules 12(b)(1) and 12(b)(6), and moves to strike Plaintiff's state law claims pursuant to California law.  *See* TAC, Doc. No. 39; Doc. No. 40.  Nearly two months later, Defendant filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11.  *See* Doc. No. 44.  Soon after, Plaintiff also filed a Rule 11 motion for sanctions.  *See* Doc. No. 47.  After multiple scheduling conflicts regarding the hearing date for the pending motions, the Court set a special briefing schedule and took all matters under submission on the papers.  *See* Doc. No. 46.

## BACKGROUND[2]

In the TAC, Plaintiff alleges Defendant owns, operates, and/or leases Dolphin Beach Apartments, located at 662 Tamarack Avenue in Carlsbad, California.  Plaintiff states that she suffers physical impairments that render her unable to walk and require her to use a wheelchair.  Plaintiff also alleges she has impaired vision, and has a "companion service dog."  *See* TAC, ¶ 53.

 "On or about September 15 2015," Plaintiff alleges she went to Dolphin Beach Apartments "to utilize their goods and/or services."  *See* TAC, ¶ 10.  Plaintiff alleges she "went to the Defendants' [sic] subject property to obtain an application to lease a rental unit" and "to determine if the general accessibility of the property would be accessible to

---

[2] Because this matter is before the Court in part on a 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the operative complaint.  *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

15CV2506-MMA (DHB)

Plaintiff if she were to successfully obtain a rental unit." *See* TAC, ¶ 10. However, Plaintiff contends that when she arrived, "she was denied equal access to and had difficulty using the public accommodations' facilities." *See* TAC, ¶ 10. Specifically, Plaintiff alleges Defendant has a rental office at the location of the apartments. Plaintiff alleges Defendant did not have "the required compliant Van Accessible disabled parking space or regular disabled parking space" or the requisite signage for such parking spaces, which caused Plaintiff to have a difficult time parking because she risked being precluded from exiting or reentering her vehicle if someone else parked improperly. *See* TAC, ¶ 11. Further, "there was a high step at the entrance threshold to the leasing office and an office doorway that was too narrow to be accessible." *See* TAC, ¶ 11. Also, the door to the office "has a round door knob that [she] is unable to twist due to her disability." *See* TAC, ¶ 11. Accordingly, Plaintiff alleges she "is unable to enter the leasing office." *See* TAC, ¶ 11. Finally, Plaintiff alleges the rental units were inaccessible "since they had a high threshold." *Id.*

Plaintiff contends she returned to the property on June 14, 2016 to find the same barriers, and thus was deterred from visiting the property in October 2015, November 2015, February 2016, and is presently deterred from visiting because of the above-described barriers. She states that she plans to return to Defendant's facilities "on August 12, 2016 to obtain leasing application materials." *See* TAC, ¶ 14. The TAC alleges Plaintiff intends to return on October 14, 2016 "for the same reason," on August 18, 2017, and at the conclusion of this litigation to verify that it is accessible and to "obtain rental applications and leasing information." *See* TAC, ¶¶ 14. Plaintiff states that she currently "resides in a rental unit located approximately only Twenty-Seven (27) miles" from the subject property and is in the "immediate area of Defendant's property at least once a month." *See* TAC, ¶ 14. She alleges that she "has been searching for a new rental facilities [sic] prior to September 2015 due to her impending departure from her current" unit. *See* TAC, ¶ 14. She states that her "current leasehold was originally to terminate in January 2016." *See* TAC, ¶ 14. Plaintiff alleges she would like to move into that area, if

15CV2506-MMA (DHB)

not into a unit at Defendant's property.  *See* TAC, ¶ 14.

Also, around September 2015, Plaintiff states she went online in order to determine whether Defendant had any apartments available to rent, and to assess the accessibility of Defendant's facilities and apartments.  *See* TAC, ¶ 10.  Plaintiff contends "Defendants' [sic] Internet advertising uses selective media or content exclusively to cater to the majority population without disabilities."  *See* TAC, ¶ 50.  Plaintiff lists webpages on which "Defendant advertises the subject property," such as, "yelp.com, yellowpages.com, carlsbad-ca.abcd4.com, apartmentcloud.org, [and etcetera]."  *See* TAC, ¶ 51.  On a couple of the websites, Plaintiff states that "the equal housing opportunity logo" appears.  *See* TAC, ¶ 51.  Plaintiff also alleges "the said advertising uses catch words, symbols or logotypes and colloquialisms that suggest a preference for people without disabilities," and "the selective placement of the equal housing opportunity logo" also suggests such a preference.  *See* TAC, ¶ 50.  "For example," the TAC alleges, "Defendants advertise statements such as it is only a walking distance to Carlsbad Village, restaurants, cafes, stores, Jefferson Elementary School, High Schools, parks, etc."  *See* TAC, ¶ 52.  Also, the TAC alleges "[s]ome advertisements say the property was built in 1994 and others state 1970."  *See* TAC, ¶ 52.  Plaintiff states:

> Defendants [sic] internet advertises that the property has amenities that include off street parking, private balcony/patio, dishwasher, refrigerator, range, spacious closets, walk in closet, new bathrooms, cabinets, counter tops, sinks, fans, new flooring throughout the unit, oven, garbage disposal, refrigerator, washer & dryer hookup, wall heater and 12 months lease term.

*See* TAC, ¶ 52.  Additionally, the TAC alleges Defendant advertises that "[i]t is a pet friendly community," and "has a pet policy, but it does not state whether Defendant's policy makes an exception for companion or service dogs."  *See* TAC, ¶ 53.  "Further," Plaintiff alleges, "none of the human models used in the said advertising have a known disability."  *See* TAC, ¶ 50.  The advertisements also allegedly "show access barriers

without any reasonable accommodation notice." *See* TAC, ¶ 53. Lastly, Plaintiff contends "Defendant's internet website [notices, statements, and advertisements] are not accessible visually since one is not able to click and increase the [] font size to make it more readable for persons with impaired vision." *See* TAC, ¶ 54.

Based on the foregoing allegations, the TAC alleges claims for violations of the ADA, FHA, and California's Unruh Civil Rights Act.

**LEGAL STANDARD**

**A.     Rule 12(b)(1)**

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "If the challenge to jurisdiction is a facial attack . . . the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012) (internal citation and quotation omitted). "Lack of standing is a defect in subject-matter jurisdiction and may be properly challenged under Rule 12(b)(1)." *Wright v. Incline Village Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1199 (D. Nev. 2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

**B.     Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of

the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## C.    Rule 11

Federal Rule of Civil Procedure 11 provides in pertinent part, that when an attorney or unrepresented party presents a signed paper to a court, that attorney or unrepresented party is certifying that to the best of his or her "knowledge, information and belief, formed after an inquiry reasonable under the circumstances" that:

(1) it is not being presented for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

*See* Fed. R. Civ. P. 11(b)(1)–(3).

When one party seeks sanctions against another, a court must first determine whether any provision of Rule 11(b) has been violated. *Warren v. Guelker*, 29 F.3d 1386, 1389 (9th Cir. 1994). A finding of subjective bad faith is not required under Rule 11. *See Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."). "Instead, the question is whether, at the time the paper was presented to the Court (or later defended) it lacked evidentiary support or contained 'frivolous' legal arguments." *Odish v. CACH, LLC*, 2012 WL 5382260, at *3 (S.D. Cal. Nov. 1, 2012). If the court determines a Rule 11 violation occurred, "the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added).

## DISCUSSION

### A.     Defendant's Motion to Dismiss

Defendant moves to dismiss Plaintiff's ADA claim pursuant to Rule 12(b)(1) on the grounds that Plaintiff fails to establish standing. Defendant moves to dismiss Plaintiff's FHA claims pursuant to Rules 12(b)(6) and 8 on the grounds that Plaintiff's allegations do not provide Defendant with adequate notice of the basis for her FHA claims. Lastly, Defendant moves to strike Plaintiff's Unruh Civil Rights Act claims on the basis that, under California law, the TAC must be verified.

//

//

i.   **Defendant's Notice of Lodgment**

As an initial matter, with Defendant's motion to dismiss, Defendant submits a "Notice and Lodgment" including more than 550 pages of documents. *See* Doc. No. 40-1. Specifically, Defendant attaches documentation regarding the number of cases Plaintiff has filed in various jurisdictions, copies of complaints filed by Plaintiff in other cases, copies of Plaintiff's original Complaint and First Amended Complaint in the instant case, a document purporting to provide directions from an address in Carlsbad, California to an address in Riverside, California, and an article regarding serial ADA litigation. *See* Doc. No. 40-1.

In Defendant's "Notice," Defendant does not describe for what purposes Defendant submits these documents, except that they are lodged "in connection with and in support of Defendant's Motion to Dismiss." *See* Doc. No. 40-1. On a motion to dismiss pursuant to Rule 12(b)(6), the Court is generally limited to the allegations of the operative complaint, and must accept those allegations as true. *See Ritchie*, 342 F.3d at 908. Defendant does not argue that the documents are part of, or incorporated by reference in, the TAC, or are proper matters for judicial notice. Accordingly, the Court declines to consider any of Defendant's proffered documents for the purposes of its motion to dismiss under Rule 12(b)(6).[3]

On the other hand, the Court may consider extrinsic evidence in ruling on a motion to dismiss for lack of standing pursuant to Rule 12(b)(1). *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141, n.5 (9th Cir. 2003). As discussed below, however, the Court declines to consider any of Defendant's documents for Defendant's proffered purposes in attacking Plaintiff's standing.

Lastly, based on the foregoing, the Court also **OVERRULES** Plaintiff's evidentiary objections to Defendant's documents as moot.

---

[3] However, insofar as Defendant seeks to rely on Plaintiff's prior pleadings in the instant action for any purposes, the Court need not take judicial notice of such filings.

### ii.    Plaintiff's ADA Claims

Defendant moves to dismiss Plaintiff's ADA claims pursuant to Rule 12(b)(1) for lack of standing.  Plaintiffs alleging violations of the ADA must demonstrate that they have Article III standing by showing that they have suffered "an injury-in-fact, that the injury is traceable to the [defendant's] actions, and that the injury can be redressed by a favorable decision."  *Chapman*, 631 F.3d at 946 (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).  Further, because injunctive relief is the only remedy available to private plaintiffs alleging ADA violations, plaintiffs must also demonstrate a "real and immediate threat of repeated injury."  *Id.*  The Ninth Circuit has held there are two ways in which a plaintiff can satisfy this requirement.  *Id.* at 949.  A plaintiff "can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier."  *Id.* at 950.  Or, a plaintiff can show that the "discriminatory architectural barriers deter him from returning to a noncompliant accommodation."  *Id.*

In the Court's previous Order granting Defendant's motion to dismiss the FAC, the Court concluded that Plaintiff failed to plausibly allege deterrence or a likelihood of future harm to establish standing.  Specifically, in the FAC, Plaintiff merely stated that she visited Defendant's property to use Defendant's "goods and/or services," that she intended to return, and that she was presently deterred from returning.  Plaintiff stated that she "has a close connection with most locations within California," but admitted to living nearly 30 miles from Defendant's property.  *See* Doc. Nos. 7, 13.  Based on the nature of Defendant's property, and Plaintiff's lack of context and conclusory allegations, the Court concluded Plaintiff did not plausibly allege actual deterrence or a genuine intent to return.

On the other hand, in the TAC, Plaintiff clarifies that she went to Defendant's property to inquire about available rental properties and that she is continuing to look for available and accessible apartments.  She states an intent to return to Defendant's property in the future to explore the possibility of renting a unit.  Accordingly, Plaintiff

cures her pleadings' prior deficiencies regarding standing, and pushes her allegations regarding future intent across the line from speculative to plausible. *See McCarn v. HSBC USA, Inc.*, No. 1:12-CV-00375 LJO, 2012 WL 7018363, at *3 (E.D. Cal. May 29, 2012) (stating that pleadings must "plausibly suggest[]" "the existence of standing"). [4]

Defendant's arguments to the contrary are unpersuasive. Defendant argues that Plaintiff's pleadings are insufficient to show a plausible intent to return because (1) Plaintiff is allegedly a serial ADA litigant, and (2) the allegations of the TAC are at odds with previous versions of Plaintiff's pleadings—particularly, the original Complaint, which Plaintiff verified under penalty of perjury.

Regarding Defendant's first grounds, Defendant calls into question Plaintiff's credibility based on Plaintiff's litigation history. Presumably in support of this argument, Defendant has lodged documents illustrating the number and nature of other cases that Plaintiff has filed. However, the Ninth Circuit has explicitly condemned a district court's reliance on a plaintiff's ADA litigation history in order to "question the sincerity of her intent to return to" the property at issue. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) ("[B]ecause the district court focused on D'Lil's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina, we reject its purported adverse credibility determination."); *cf. Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."). Thus, it is inappropriate for the Court to rely on Defendant's extrinsic documents for Defendant's proffered purpose, and the Court declines to discount Plaintiff's credibility based on her other litigation.

Regarding Defendant's second grounds for dismissal of Plaintiff's ADA claims,

---

[4] A plaintiff must plead standing in accordance with the Federal "*Twombly/Iqbal* standard." *See McCarn*, 2012 WL 7018363, at *3.

the Court is unpersuaded that Plaintiff has necessarily contradicted herself in the TAC as compared with Plaintiff's verified[5] original Complaint. In Plaintiff's original Complaint, Plaintiff stated that she "is also a tester as Plaintiff Cross desires to determine if the Defendants [sic] are complying with the housing and access laws and will continue to do so after this case is completed." *See* Compl., Doc. No. 1-2, ¶ 2. Defendant specifically takes issue with Plaintiff's use of the term "tester." *See* Compl., ¶ 2. Defendant urges the Court to find that this statement is directly contradicted by Plaintiff's allegation in the TAC that she visited Defendant's property as a potential renter. Defendant argues that Plaintiff cannot be both a tester and a prospective tenant because "the law defines testers as 'individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." *See* Doc. No. 40 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)).

Essentially, Defendant asks the Court to infer facts that are absent from Plaintiff's Complaint, based solely on her use of the word "tester." In other words, Plaintiff's original Complaint did not include facts that would support Defendant's legal definition of a tester. For example, Plaintiff did not allege that she had no intent to rent, or inquire about renting, an apartment. Rather, the Complaint only stated that Plaintiff was a tester in that she desired to determine whether Defendant's facilities were compliant with certain laws, and also that Plaintiff visited the facilities for their goods or services. Thus, to adopt Defendant's argument, the Court would have to read into Plaintiff's Complaint facts which did not appear therein—namely, that Plaintiff had *no* intent to rent or inquire

---

[5] A verified complaint may have evidentiary value as an affidavit. *See Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir. 1995) (stating that if based on personal knowledge and setting forth admissible facts, "[a] verified complaint may be used as an opposing affidavit" for purposes of summary judgment); *Klian v. Crawford*, No. CV1202373MMMJEMX, 2012 WL 12878721, at *2 (C.D. Cal. June 6, 2012) ("A verified complaint can, if based on personal knowledge, serve as the equivalent of an affidavit for purposes of a motion to dismiss for lack of personal jurisdiction.").

about renting a unit. The Court declines to do so.[6] Consequently, Plaintiff's allegations are not in direct conflict. It is not impossible for Plaintiff to have had both the intent to inquire about renting a unit, and the intent to "test" the accessibility of the facilities.

Based on the foregoing, the Court **DENIES** Defendant's motion to dismiss Plaintiff's ADA claims. *See* Doc. No. 40.

Lastly, because Defendant's motion for sanctions under Rule 11 is based solely on Defendant's second grounds for dismissal, the Court also **DENIES** Defendant's motion for sanctions. *See* Doc. No. 44. Specifically, because the Court disagrees with Defendant's contention that in filing the TAC, Plaintiff "flatly contradicted" her allegations in the verified original Complaint, the Court does not conclude that Plaintiff filed the TAC for an improper purpose, in bad faith, or that the TAC is clearly unsupported by the evidence. *See* Doc. No. 44.

### iii. Plaintiff's FHA Claims

Plaintiff asserts three causes of action under the FHA: (1) violation of section 3604(f)(1); (2) violation of section 3604(f)(2); and (3) violation of section 3604(c).[7] *See* Doc. No. 39. In Defendant's motion to dismiss, Defendant makes no mention of Plaintiff's claims under sections 3604(f)(1) and (2). Rather, Defendant focuses solely on Plaintiff's 3604(c) claim, arguing that Plaintiff fails to allege any notices, statements, or advertisements attributable to Defendant that indicate a discriminatory preference. In Defendant's reply brief, Defendant argues that the Court should also dismiss Plaintiff's

---

[6] Further, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Even if treated as an affidavit, the Court would not accept legal conclusions in the Complaint as true or infer absent factual allegations to support those legal conclusions. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) (disregarding legal conclusions in a verified complaint as having no bearing on a summary judgment motion); *see Daghlan v. TBI Mortg. Co.*, No. CV-12-01415-PHX-NVW, 2013 WL 179452, at *8 (D. Ariz. Jan. 17, 2013).

[7] Defendant argues it cannot liable for violating 24 C.F.R. section 109 because that section was "eliminated from the CFR in 1996." *See* Doc. No. 40. However, while the TAC cites extensively to that regulation, Plaintiff does not allege a cause of action for violation of that section. Further, Plaintiff acknowledges that section 109 is "no longer independently operative." *See* Doc. No. 48.

3604(f) claims on the grounds that Plaintiff admits that she saw Defendant's property under construction and accordingly, Plaintiff does not know whether the barriers she alleges to have encountered still exist.

### a. Plaintiff's Section 3604(c) Claim

Regarding Plaintiff's section 3604(c) claim, Defendant moves for dismissal pursuant to Rule 12(b)(6) on the grounds that "Plaintiff has not alleged sufficient facts to in any way notify the Defendant what advertisements are in supposed violation of the FHA, or why." *See* Doc. No. 40. Section 3604 of the FHA states, in pertinent part:

> [I]t shall be unlawful— . . . (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

*See* 42 U.S.C. § 3604. Although a plaintiff need not show discriminatory intent, a plaintiff must point to a statement that suggests to the "ordinary" listener or reader a discriminatory preference. *See Llanos v. Estate of Coehlo*, 24 F. Supp. 2d 1052, 1057 (E.D. Cal. 1998); *Lee v. Retail Store Employee Bldg. Corp.*, No. 15-CV-04768-LHK, 2017 WL 346021, at *15 (N.D. Cal. Jan. 24, 2017). To establish a claim under section 3604(c), a plaintiff must demonstrate "(1) that [the] defendant made a statement, (2) that statement was made with respect to the sale or rental of a dwelling, and (3) the statement indicated a preference, a limitation, or discrimination against the plaintiff on the basis of" their protected status. *See United States v. Hadlock*, No. CV 08-3074-CL, 2010 WL 331772, at *4 (D. Or. Jan. 27, 2010) (citing *White v. HUD*, 475 F.3d 898, 904 (7th Cir. 2007)).

Here, Plaintiff fails to delineate a single notice, statement, or advertisement that an ordinary person would conclude conveys a discriminatory preference. For example, Plaintiff alleges Defendant's "selective placement of the equal housing opportunity logo"

"suggests a preference for people without disabilities." *See* TAC, ¶ 51. It is unclear why use of the equal housing opportunity logo on some advertisements, or the lack of the logo on others, would convey a discriminatory preference for tenants without disabilities. *See Green v. California Court Apartments, LLC*, No. C07-334-MJP, 2008 WL 681835, at *4 (W.D. Wash. Mar. 10, 2008), aff'd, 321 F. App'x 589 (9th Cir. 2009) (dismissing the plaintiff's claim that the defendant violated section 3604(c) by failing to "post notice of the [existence of the] Fair Housing Act").

Further, Plaintiff states that other advertisements state that the apartment complex is within walking distance to certain locations in Carlsbad, and that the complex includes various amenities such as "off street parking, private balcony/patio, dishwasher, refrigerator, range, spacious closets, walk in closet, new bathrooms, cabinets, counter tops, sinks, fans, new flooring throughout the unit, oven, garbage disposal, refrigerator, washer & dryer hookup, wall heater and 12 months lease term." *See* TAC, ¶ 52. Again, the Court is unable to conclude that such statements "indicate[] a preference, a limitation, or discrimination" against individuals with disabilities, such as Plaintiff.

Plaintiff also alleges none of the advertisements contain models with disabilities, but Plaintiff does not describe any advertisements as containing any models. Further, Plaintiff complains that Defendant advertises that it has a "pet policy," but that Defendant's advertisement does not explicitly state that it allows service and companion animals. An ordinary reader would not interpret such an omission as discriminatory toward those with companion animals, and the concept that an omission may constitute a notice, statement, or advertisement is tenuous. *See Green* 2008 WL 681835, at *4 ("Because section 3604(c) does not apply to non-existent publications, Plaintiffs have not stated a claim on which relief may be granted."). Lastly, Plaintiff does not point the Court to any authority or case law to support her contention that Defendant's advertisements or notices violate section 3604(c).

For the foregoing reasons, the TAC fails to describe any publication or statement attributable to Defendant which would convey to the ordinary reader an unlawful

15CV2506-MMA (DHB)

preference for tenants without disabilities.  As such, the Court **GRANTS** Defendant's motion to dismiss, and **DISMISSES** Plaintiff's claim under 42 U.S.C. § 3604(c) with prejudice.[8]

### b.    Plaintiff's Section 3604(f) Claims

Regarding Defendant's request for dismissal of Plaintiff's claims under sections 3604(f)(1) and (2), Defendant makes its request for the first time in its reply brief.  "It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."  *O'M & Assocs., LLC v. Ozanne*, No. 10CV2130 AJB RBB, 2011 WL 2160938, at *6 (S.D. Cal. June 1, 2011) (quoting *United States ex rel. Giles v. Sardie,* 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000)); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  The Court could disregard Defendant's request on those grounds alone.

Nevertheless, the Court is unpersuaded by Defendant's proffered grounds for dismissal.  Defendant argues Plaintiff's claims should be dismissed because Plaintiff stated, in a declaration submitted in support of her brief in opposition to Defendant's motion for sanctions, that she visited Defendant's property and saw it under construction. Consequently, Defendant argues Plaintiff "cannot honestly argue she has any idea whether the architectural barriers she ostensibly saw remain at the property, or whether they are now remedied, immediately mooting any claim for injunctive relief and any possibility of future damages."  *See* Doc. No. 51.

Although Defendant does not state whether it moves to dismiss such claims pursuant to Rule 12(b)(6) or 12(b)(1), the Court infers that Defendant moves to dismiss Plaintiff's section 3604(f) claims under Rule 12(b)(1) because Defendant relies on the

---

[8] Dismissal with prejudice is appropriate because the Court has already provided Plaintiff with the opportunity to amend this claim, and Plaintiff has failed to cure the deficiencies of her claim.  Further, amendment would be futile because Plaintiff states in the TAC that she "downloaded and reviewed" "all" of Defendant's advertisements online.  *See* TAC ¶ 50.  Accordingly, Plaintiff would not be able to amend to allege any advertisements not already included in the TAC.

doctrine of mootness and on extrinsic evidence.[9]  While a Rule 12(b)(6) motion is generally limited to the complaint, "[a] jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence."  *See Local Search Ass'n v. City & Cty. of San Francisco*, No. C 11-2776 SBA, 2013 WL 450845, at *2 (N.D. Cal. Feb. 4, 2013) (quoting *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003).  Thus, the Court considers the declaration that Defendant relies on.  In Plaintiff's declaration, she merely states that, on August 12, 2016, "the property was undergoing construction activity."  *See* Doc. No. 49-2.  Plaintiff does not provide any information regarding the nature or specific location of the construction.  Therefore, Plaintiff does not state that the construction she observed related to any of the architectural barriers described in the TAC.

Further, even assuming Plaintiff has somehow admitted that she is not certain the alleged barriers still exist, the Court rejects the proposition that where a plaintiff is not certain that architectural barriers underlying his or her claims still exist at some point after a complaint is filed, the plaintiff's claims are instantly moot.  In other words, Defendant does not argue that because it has remedied the alleged architectural barriers, Plaintiff's claims are moot.[10]  Rather, Defendant argues Plaintiff's claims are moot because Plaintiff may not know with certainty that any alleged architectural barriers currently exist.  The Court is unaware of, and Defendant does not cite to, any case within this Circuit that stands for such a proposition.[11]

---

[9] "Standing, ripeness and mootness all pertain to a federal court's subject matter jurisdiction under Article III, and are appropriately raised in a motion under Rule 12(b)(1)." *Local Search Ass'n v. City & Cty. of San Francisco*, No. C 11-2776 SBA, 2013 WL 450845, at *2 (N.D. Cal. Feb. 4, 2013).

[10] If that were the case, Defendant would have a much stronger argument.  *See Dodson v. Joseph Esperanza, Jr., LLC*, No. 2:12-CV-02132-TLN, 2013 WL 6328274, at *2 (E.D. Cal. Dec. 4, 2013) ("A defendant's voluntary removal of alleged barriers can have the effect of mooting a plaintiff's ADA claim.").  But, Defendant would still bear a heavy burden.  Even where a defendant "claim[s] that its voluntary compliance moots a case," the defendant "bears [a] formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

[11] In fact, Defendant does not cite to any legal authority to support its argument.

For the above reasons, the Court **DENIES** Defendant's request that the Court dismiss Plaintiff's FHA claims arising under sections 3604(f)(1) and (2).

### iv. Plaintiff's Unruh Civil Rights Act Claims

Lastly, Defendant moves to strike Plaintiff's Unruh Civil Rights Act claims on the grounds that the California Code of Civil Procedure requires that Plaintiff file verified complaints, and the TAC is not verified. "The California legislature has modified the pleading requirements for complaints alleging construction-related accessibility claims by requiring plaintiffs to allege" with heightened specificity their encounters with alleged barriers, and "to verify the complaint." *See Oliver v. In-N-Out Burgers*, 286 F.R.D. 475, 477 (S.D. Cal. 2012); Cal. Code Civ. P. § 425.50. "A complaint filed without verification shall be subject to a motion to strike." *See* Cal. Code Civ. P. § 425.50(b)(1).

In Defendant's motion to dismiss, Defendant provides no legal argument or case support for its contention that Plaintiff's state law claims "are subject to a Motion to Strike" or "fail as a matter of law" because the TAC is unverified. *See* Doc. No. 40. Instead, Defendant merely makes the request that the Court strike Plaintiff's state law claims on those grounds. *See* Doc. No. 40.

In response, Plaintiff cites to several district court cases in this Circuit in which the courts rejected similar arguments on the grounds that California procedural law does not apply in federal court under the *Erie* doctrine. *See* Doc. No. 48; *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Plaintiff also argues that if she were required to comply with section 425.50, she would have to verify her entire complaint, meaning that Plaintiff's federal ADA and FHA claims would also be subject to an otherwise nonexistent pleading requirement. Additionally, Plaintiff argues that, in similar situations, courts in this Circuit have concluded that other requirements of the Unruh Civil Rights Act—such as the requirement that courts impose mandatory stays and hold early evaluation conferences—were preempted by the ADA. *See* Doc. No. 48 (citing *Lamark v. Laiwalla*, No. CIV. 2:12–3034 WBS AC, 2013 WL 3872926 (July 25, 2013), for example).

In Defendant's reply brief, Defendant responds that many of the cases that Plaintiff

relies on are nonbinding, unpublished district court cases, and do not specifically address the verification requirement. Also, Defendant extrapolates some on the grounds for its contention that Plaintiff's state law claims must be stricken. Defendant acknowledges for the first time that the *Erie* doctrine controls whether section 425.50 applies to this action. Defendant notes that the Third and Tenth Circuits have concluded that two state statutes, which both required plaintiffs in certain professional liability cases to file certificates of merit after filing the complaint, applied to cases in federal court.[12] Further, Defendant states that the Ninth Circuit has addressed a similar situation to the one at hand in *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, in which the Ninth Circuit held that the California Anti-SLAPP statute, which allows parties to move to strike state law claims in some instances, applies to state law claims in federal court. *See* Doc. No. 51 (citing *Newsham*, 190 F.3d 963 (9th Cir. 1999)). Defendant concludes that, although *Newsham* does not address the particular statute at hand, "it does indicate that the 9th Circuit is inclined to uphold against the rigors of *Erie* statutes which provide additional procedures and safeguards to protect defendants against potentially meritless litigation." *See* Doc. No. 51.

As an initial matter, Defendant improperly raises new arguments and law for the first time in its reply brief. In Defendant's motion, Defendant does not make any arguments as to why a provision of the California Code of Civil Procedure would apply to the instant action, nor cite to or discuss the *Erie* doctrine. Defendant did not cite to any cases until its reply brief, depriving Plaintiff of the chance to respond to Defendant's reliance on those cases. As discussed above, it is inappropriate for parties to raise new legal arguments in their reply briefs, and district courts may disregard such arguments. *See Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *4 (D. Ariz. Sept. 30, 2009) (stating that "[c]onsistent with long-standing

---

[12] But, Defendant also admits that the Eleventh Circuit has come to the opposite conclusion in a similar case.

Ninth Circuit case law, this Court will deem as waived any substantive legal arguments made for the first time in a reply brief"). "Each time the moving party is permitted to raise new arguments or present new evidence in reply . . . the non-moving party is essentially deprived of the opportunity to address these new contentions." *Id.*

Further, even considering the arguments in Defendant's reply brief, Defendant, as the moving party, fails to make any showing as to why application of section 425.50 would be proper under *Erie*. In fact, aside from acknowledging the relevance of the *Erie* doctrine in Defendant's reply brief, Defendant does not address any of the considerations of an *Erie* analysis. "*Erie* has come to stand for the general principle that 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" *In re Cty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015) (quoting *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Accordingly, pleading requirements are typically governed by federal procedural law. "When confronted with an *Erie* question, we first ask whether a Federal Rule of Civil Procedure or a federal law governs." *Id.* "If so, we will apply that rule—even in the face of a countervailing state rule." *Id.* Defendant does not explain why the Court should not just apply Federal Rules of Civil Procedure 8 and 12, which govern pleading, and Rule 11, which states that pleadings generally need not be verified.

Even assuming the Federal Rules of Civil Procedure do not alone govern pleading, Defendant does not address whether section 425.50 is procedural or substantive. "Absent an applicable Federal Rule or law, [courts] apply the 'relatively unguided' *Erie* analysis, which calls on [courts] to determine whether the rules at issue are substantive or procedural," and which can be "a challenging endeavor." *Id.* (internal citations omitted). "[T]here is no bright line distinguishing substance from procedure, [and] the meanings of these terms shade into one another by degrees and vary from context to context." *Id.* (quoting Larry Kramer, *Choice of Law in Complex Litigation,* 71 N.Y.U. L.Rev. 547, 569 (1996)). Defendant does not argue section 425.50 is substantive and in fact, Defendant describes the rule as procedural several times throughout its briefing. *See* Doc. No. 40, at

3, n.1, 4:5–6; Doc. No. 51, at 4:16–17.

Further, in situations where it is not readily apparent whether a rule is substantive or procedural, courts apply the "outcome-determination test," under which courts inquire: "does [the rule] significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *See Gasperini*, 518 U.S. at 427 (citing *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945)). This test must be applied with *Erie's* "twin aims" in mind: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *See id.* at 428. Defendant does not address how the considerations of the outcome-determination test or the twin aims of *Erie* apply to this case.

Lastly, the Supreme Court has stated that the "outcome-determination" test is "an insufficient guide in cases presenting countervailing federal interests." *Id.* (citing *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525 (1958)). Defendant does not address whether there are countervailing federal interests. Further, Plaintiff contends that she would have to verify her entire complaint, including federal claims, in order to comply with section 425.50. Plaintiff is correct in that section 425.50(b)(1) insinuates that the entire complaint must be verified. *See* Cal. Code Civ. P. § 425.50. Thus, countervailing federal interests may be implicated if plaintiffs are required to verify federal claims as well as Unruh Civil Rights Act claims in federal court. Defendant does not respond to Plaintiff's argument.

In sum, Defendant does not make the requisite showing that it would be appropriate under *Erie* and its progeny to apply section 425.50(b)(1) to this action. The Court finds it imprudent to undertake a full *Erie* analysis in the absence of adequate briefing. Further, the only other Courts to have addressed whether any provisions of section 425.50 apply in federal court have concluded that they do not. *See, e.g.*, *Schoors v. Seaport Vill. Operating Co., LLC*, No. 16CV3089-AJB-BGS, 2017 WL 1807954, at *3 (S.D. Cal. May 5, 2017); *Strong v. Johnson*, No. 16CV1289-LAB (JMA), 2017 WL 201737, at *3 (S.D. Cal. Jan. 18, 2017); *Oliver*, 286 F.R.D. at 477; *Saavedra v. Chu.*, No.

517CV00607ODWEX, 2017 WL 2468779, at *1 (C.D. Cal. June 7, 2017).

Based on the foregoing, the Court **DENIES** Defendant's motion to strike or dismiss Plaintiff's Unruh Civil Rights Act claims.

**B.    Motions for Sanctions**

Both parties move for sanctions pursuant to Rule 11.  *See* Doc. Nos. 44, 47.  As discussed above, the Court **DENIES** Defendant's motion for sanctions.

In support of Plaintiff's motion for sanctions, Plaintiff argues Defendant's motion for sanctions violates Rule 11.  In particular, Plaintiff argues that Defendant's motion for sanctions is frivolous because Defendant disputes Plaintiff's motive for being on Defendant's property, and she is not required to plead her "subjective motive" for being there.  Plaintiff also argues that Defendant's motion for sanctions is duplicative and presented for an improper purpose because Defendant's motion is based on the same argument that Defendant had already raised in arguing Plaintiff's ADA claims should be dismissed for lack of standing.

As a preliminary matter, after Plaintiff filed her reply brief in support of her motion for sanctions, Defendant filed a supplemental document[13] arguing that Plaintiff's reply brief is untimely and should be stricken.  *See* Doc. No. 54.  In response to Defendant's supplemental document, Plaintiff filed an *ex parte* motion requesting that the Court consider Plaintiff's reply brief.  *See* Doc. No. 55.  Plaintiff filed her reply brief on Monday, February 20, 2017, which was a federal holiday.  *See* 5 U.S.C. § 6103(a) (stating that the third Monday in February is Washington's Birthday).  Accordingly, pursuant to Civil Local Rule 7.1(e)(3), Plaintiff was required to file her reply brief on or before Friday, February 17, 2017.  While Defendant is correct that Plaintiff should have filed her reply brief on the Friday prior to the Court holiday, the Court considers Plaintiff's reply brief in the interests of justice.  Generally, public policy favors

---

[13] Defendant titled the document "Reply – Other."  *See* Doc. No. 54.  The Court notes that, in the future, any document which requests the Court strike a pleading must be filed as a motion—either *ex parte* or fully noticed.

disposition of cases on their merits. *See Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998). Accordingly, the Court **GRANTS** Plaintiff's *ex parte* motion, Doc. No. 55, and turns to the merits of Plaintiff's motion for sanctions.

First, while the Court denies Defendant's motion for sanctions, the Court does not find the motion frivolous. A filing is frivolous if it "is both baseless and made without a reasonable and competent inquiry." *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). Defendant's stance that the TAC contradicted prior verified allegations is not frivolous, despite that the Court declines to adopt Defendant's theory that it should read into Plaintiff's Complaint Defendant's proffered legal definition of "tester." Further, the Court does not find Defendant filed its motion for sanctions for an improper purpose. While based on the same grounds, Defendant seeks different relief in Defendant's motion for sanctions, as compared with Defendant's motion to dismiss. Accordingly, the Court does not find Defendant's motion was filed to improperly multiply the proceedings. Thus, the Court **DENIES** Plaintiff's motion for sanctions.

In sum, the Court declines to exercise its discretion to impose sanctions on either party. *See Hilo v. BP Expl. & Oil*, 108 F.3d 337 (9th Cir. 1997) ("Rule 11 makes the imposition of sanctions discretionary.").

<h2 style="text-align:center">CONCLUSION</h2>

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss and motion to strike Plaintiff's claims in the TAC. *See* Doc. No. 40. The Court **DENIES** Defendant's motion for sanctions, and **DENIES** Plaintiff's motion for sanctions. *See* Doc. Nos. 44, 47.

**IT IS SO ORDERED.**

Dated: June 28, 2017

Hon. Michael M. Anello
United States District Judge

15CV2506-MMA (DHB)